*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0248**

Eric Dennis Carter, petitioner,
Appellant,

vs.

Commissioner of Public Safety,
Respondent.

**Filed August 24, 2015
Affirmed
Klaphake, Judge**[*]

Dakota County District Court
File No. 19WS-CV-14-816

Douglas V. Hazelton, Halberg Criminal Defense, Bloomington, Minnesota (for appellant)

Lori Swanson, Attorney General, Rory C. Mattson, Assistant Attorney General, St. Paul, Minnesota (for respondent)

Considered and decided by Rodenberg, Presiding Judge; Cleary, Chief Judge; and Klaphake, Judge.

**U N P U B L I S H E D   O P I N I O N**

**KLAPHAKE**, Judge

Appellant Eric Dennis Carter challenges the district court's order denying his motion to suppress the results of his breath test and sustaining the revocation of his

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

driver's license, arguing that the district court clearly erred in finding that he voluntarily consented to a breath test. Because the record supports the district court's voluntariness finding, we affirm.

## D E C I S I O N

The question of whether consent to a search was voluntary is a question of fact, which we review for clear error. *State v. Diede*, 795 N.W.2d 836, 846 (Minn. 2011). "Findings of fact are clearly erroneous if, on the entire evidence, we are left with the definite and firm conviction that a mistake occurred." *State v. Andersen,* 784 N.W.2d 320, 334 (Minn. 2010).

Shortly before midnight on May 10, 2014, State Trooper Anthony Mains stopped Carter for speeding. He observed that Carter exhibited multiple signs of alcohol consumption and arrested Carter for driving while impaired (DWI). While placing Carter in the back of his squad car, Trooper Mains said, "If you're cooperative with me, I'll let you go tonight so you don't have to spend the night in jail." Trooper Mains transported Carter to the Dakota County Law Enforcement Center, where he read Carter the implied-consent advisory. After consulting with an attorney, Carter submitted to a breath test.

A test of a person's breath constitutes a search for purposes of the Fourth Amendment. *Skinner v. Railway Labor Execs.' Ass'n*, 489 U.S. 602, 616-17, 109 S. Ct. 1402, 1413 (1989). As a general rule, a search requires either a warrant or an exception to the warrant requirement, such as the person's consent. *Missouri v. McNeely*, 133 S. Ct. 1552, 1558 (2013); *State v. Brooks*, 838 N.W.2d 563, 568 (Minn. 2013), *cert. denied*, 134 S. Ct. 1799 (2014). The state has the burden of showing by a preponderance of the

evidence that the defendant freely and voluntarily consented. *Brooks*, 838 N.W.2d at 568. "Whether consent is voluntary is determined by examining the totality of the circumstances." *Id.* (quotation omitted).

Carter argues that the district court clearly erred in finding that he voluntarily consented to the breath test. He contends that Trooper Mains coerced his consent by telling him he would not spend the night in jail if he was "cooperative." We disagree. Carter focuses on the officer's comment about being cooperative, but voluntariness depends on the totality of the circumstances. *Id.* Those circumstances include not merely what the officer said to Carter, but how he said it, the kind of person Carter is, how the officer came to suspect Carter was driving under the influence, the reading of the implied-consent advisory, and whether Carter had the right to consult with an attorney. *See id.* at 569.

The district court appropriately considered the totality of the circumstances in finding that Carter voluntarily consented to testing. Trooper Mains had probable cause to arrest Carter for DWI and pursue chemical testing. He requested that Carter be "cooperative" but did not tie that request to chemical testing and was not overbearing or aggressive; rather, the district court found that Trooper Mains was "candid, honest, and respectful in the way he conducted himself" toward Carter. When Trooper Mains requested that Carter submit to chemical testing, he read Carter the standard implied consent advisory, which clearly informed Carter that he had a choice whether to submit to testing. *See id.* at 572. Carter understood the advisory. He consulted with an attorney. He verbally agreed to take a breath test, and he completed the testing process.

Carter testified that Trooper Mains's statement about not staying in jail if he was "cooperative" affected his decision to submit to testing because he did not want to spend the night in jail. We agree that a vague request for cooperation is unnecessarily confusing and, in some cases, might support a finding that a driver's consent to testing was not voluntary. We also are concerned that tying such a request to a driver's release misrepresents the extent of an arresting officer's authority in determining whether to detain a suspected drunk driver. *See* Minn. R. Crim. P. 6.01 (requiring that arrested person be cited and released unless separate authority determines continued detention is warranted). But on this record, the district court found it "speculative" that Carter believed that he could not refuse testing. At most, Carter faced a difficult choice regarding testing. Consent can be voluntary "even if the circumstances of the encounter are uncomfortable" or the driver is presented with a difficult choice, so long as he understands he has the right to refuse testing. *See Brooks*, 838 N.W.2d at 569, 571. Because Carter was accurately informed of and understood his right to refuse chemical testing, we are not left with the definite and firm conviction that the district court's voluntariness finding is a mistake. Accordingly, we conclude that the district court did not err in denying Carter's motion to suppress and sustaining his license revocation.

**Affirmed.**

4